STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0826

**IN THE MATTER OF THE SUCCESSION OF
LOYCE SPURLOCK SCOTT**

Judgment Rendered:  **MAR 2 0 2024**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court Docket Number P110821, Div./Sec. 27

Hon. Max N. Tobias, Judge Presiding

* * * * * * *

W. Michael Stemmans                          Counsel for Plaintiffs/Appellees,
M. Todd Alley                                Ron Troyd Ennis and
Michael J. Taffaro                           Sadie Ennis Williams
Jennifer E. Frederickson
Baton Rouge, Louisiana


Kathleen Wilson                              Counsel for Defendant/Appellant,
Baton Rouge, Louisiana                       Thomas Scott, Jr.


* * * * * * *

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**PENZATO, J.**

In this succession proceeding, Thomas Scott, Jr., the decedent's spouse, appeals a judgment of the trial court denying his objection to the succession administrator's preliminary detailed descriptive list and sustaining the administrator's peremptory exception of prescription. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

A petition to open the succession of Loyce Spurlock Scott and to appoint her daughter, Sadie Ennis Williams, as administrator was filed on December 22, 2021. According to the petition, Mrs. Scott died intestate on November 26, 2021. At the time of her death, Mrs. Scott was married to Thomas Scott, Jr.

Ms. Williams was appointed as the administrator of Mrs. Scott's succession on January 4, 2022. On April 27, 2022, Ms. Williams filed a preliminary detailed descriptive list, identifying a parcel of immovable property with a municipal address of 15035 Shenandoah Ave., Baton Rouge, Louisiana, as Mrs. Scott's separate property.[1]

Mr. Scott filed an objection to the preliminary detailed descriptive list on July 29, 2022, stating the Shenandoah property was not Mrs. Scott's separate property but was, instead, owned by the community. Ms. Williams opposed Mr. Scott's position regarding the classification of the property. She also raised a peremptory exception of prescription, arguing Mr. Scott's right to controvert Mrs. Scott's declaration of acquisition of separate property, made by Mrs. Scott in the Act of Cash Sale for the Shenandoah property, was prescribed. *See* La. C.C.P. art. 927(A)(1); La. C.C. art. 2342.

---

[1] The preliminary detailed descriptive list also identified movable property owned by the community and the properties' estimated value. Mr. Scott filed a traversal of the preliminary detailed descriptive list, disputing the monetary values for the community movable property assigned by Ms. Williams. The value of this property is not at issue in this appeal.

2

An evidentiary hearing on Mr. Scott's objection to the preliminary detailed descriptive list was held on April 4, 2023. At the conclusion of the hearing, the trial court rendered judgment sustaining the exception of prescription, denying Mr. Scott's objection to the preliminary detailed descriptive list, and finding the Shenandoah property was Mrs. Scott's separate property. Mr. Scott filed the instant appeal from the trial court's April 20, 2023 judgment.

## JURISDICTION

This court's appellate jurisdiction extends to final judgments and to interlocutory judgments when expressly allowed by law.[2] *See* La. C.C.P. art. 2083; *Succession of Saucier*, 2021-1466 (La. App. 1st Cir. 6/29/22), 344 So.3d 108, 113. Appellate courts have a duty to examine their subject matter jurisdiction *sua sponte*. *Succession of Saucier*, 344 So.3d at 113. Louisiana Code of Civil Procedure article 2974 provides, in part, that appeals from orders or judgments rendered in succession proceedings are governed by the rules applicable to appeals in ordinary proceedings.

The April 20, 2023 judgment does not dismiss a party, is not a judgment of possession of the property at issue, and does not determine the merits of all issues in the succession proceeding. Therefore, it is a partial judgment appealable only if authorized by La. C.C.P. art. 1915. *See In re Succession of Morgan*, 2015-0335 (La. App. 1st Cir. 2/24/16), (unpublished) 2016 WL 770192 at *2 (judgment declaring ownership of disputed estate property, which was not a judgment of possession and did not dismiss a party, was a partial judgment subject to appeal only as provided by La. C.C.P. art. 1915); *In re Succession of Faget*, 2006-2159 (La. App. 1st Cir. 9/19/07), 984 So.2d 7, 9-10 (judgment declaring surviving spouse to be a co-owner

---

[2] A final judgment determines the merits of a controversy, in whole or in part; in contrast, an interlocutory judgment does not determine the merits, but only preliminary matters in the course of an action. *See* La. C.C.P. art. 1841.

3

of family home was a partial judgment subject to appeal only under La. C.C.P. art. 1915).

Louisiana Code of Civil Procedure art. 1915(A) identifies those partial final judgments that are appealable as a matter of right. *See Triton Diving Services LLC v. Offshore Marine Service Association, Inc.*, 2023-0169 (La. App. 1st Cir. 9/21/23), 372 So.3d 832, 836. The April 20, 2023 judgment does not fall within one of the categories enumerated in Article 1915(A). Therefore, the judgment is only appealable pursuant to Article 1915(B)(1), which pertinently provides that a partial judgment "shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay."[3]

The judgment on appeal states that it is a final judgment pursuant to La. C.C.P. 1915, and "[n]o just reason for delay of an appeal exists." Presumably, the trial court intended to certify the judgment pursuant to Article 1915(B); however, this designation by the trial court is not determinative of this court's jurisdiction. *See Crosstex Energy Services, LP v. Texas Brine Co., LLC*, 2022-0832 (La. App. 1st Cir. 3/16/23), 363 So.3d 557, 562. Where, as here, no reasons for the certification are provided, but some justification is apparent from the record, the appellate court should make a *de novo* determination of whether the certification was proper, considering the factors set forth in *R.J. Messinger, Inc. v. Rosenblum*, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23. Particularly, *Messinger* instructs this court to consider the relationship between the adjudicated and unadjudicated claims; the possibility the need for review might or might not be mooted by future developments in the trial court; the possibility the reviewing court might be obliged to consider the

---

[3] The Louisiana Code of Civil Procedure provides for an appeal from certain partial judgments in succession proceedings. *See* La. C.C.P. arts. 2122, 2974, 3308, and 3337. The judgment on appeal does not fall into one of these categories.

4

same issue a second time; and miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, and expense. *Messinger*, 894 So.2d at 1122-23.

Applying these factors, we find the April 20, 2023 judgment was properly certified pursuant to La. C.C.P. art. 1915(B). The determination of whether the trial court erred in finding Mr. Scott's right to controvert Mrs. Scott's declaration of acquisition of separate property was prescribed and the classification of the Shenandoah property as separate or community property may facilitate resolution of the remaining litigation, reduce the costs of litigation, and foster judicial economy. Therefore, appellate review at this juncture is warranted.

## FACTS ESTABLISHED DURING THE EVIDENTIARY HEARING

Mrs. Scott was involved in a car accident in 2005 and subsequently filed suit for personal injuries. Mr. Scott was not involved in the accident nor was he injured, but he was a party plaintiff in Mrs. Scott's lawsuit. The Scotts settled their claims arising out of the accident in May 2007 and received a check in the amount of $850,000 from Travelers Indemnity Company, the defendant insurer. A copy of the check, which included Travelers' "explanation of payment," was admitted into evidence. The check is dated May 17, 2007 and made payable to Loyce Scott, Thomas Scott, and their attorney for "BODILY INJURY LIABILITY" and for "FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS."

According to Ms. Williams, the Scotts received $379,000. Mr. Scott was unable to recall the amount of settlement funds the Scotts personally received after costs and fees were deducted from the $850,000 total settlement; however, he confirmed it was more than $300,000. Mr. Scott testified that, to his knowledge, Mrs. Scott did not have a separate bank account during their marriage, and the settlement funds were deposited into the Scotts' joint bank account.

5

Mrs. Scott purchased the Shenandoah property on June 14, 2007 for $232,000. Mrs. Scott paid the full purchase price of the property via cashier's check remitted in her name alone.[4] The Act of Cash Sale, also introduced into evidence, identifies Mrs. Scott as "PURCHASER(S)" and states:

> **Loyce S. Scott**, born Spurlock, a resident of the full age of majority of the Parish of East Baton Rouge, State of Louisiana, who declared that she is married to and living with Thomas Scott, acquiring the hereinafter described property as her separate property, with her separate funds, for use under her separate administration and control[.] (Emphasis original.)

Mr. Scott was not present at the closing when Mrs. Scott purchased the Shenandoah property, did not sign purchase documents for the property, and did not execute a power of attorney authorizing Mrs. Scott to complete the purchase on his behalf. Mr. Scott testified that he believed the Shenandoah property belonged to both he and Mrs. Scott, and he first became aware the property was allegedly Mrs. Scott's separate property through the subject succession proceeding. Conversely, Ms. Williams testified that her mother and Mr. Scott consistently recognized the Shenandoah property was Mrs. Scott's separate property.

Sheila Robinson was Mrs. Scott's real estate agent for the purchase of the Shenandoah property. Ms. Robinson testified that Mrs. Scott "was really being persistent" in her efforts to purchase a home when she "knew that she was going to come into [the] settlement," related to the 2005 car accident. Ms. Robinson also stated that, prior to the closing, Mrs. Scott asked whether she could purchase the property in her name alone. Ms. Robinson advised Mrs. Scott to speak to the closing attorney about the issue.

---

[4] The copy of the cashier's check admitted into evidence is in the amount of $233,353.47 made payable to Commerce Title.

## DISCUSSION

Under Louisiana law, property of married persons is generally characterized as either community or separate. La. C.C. art. 2335. Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community. La. C.C. art. 2340. However, the law provides that damages recovered due to personal injuries sustained during the existence of the community by a spouse are separate property; although, the portion of damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. La. C.C. art. 2344. Additionally, separate property includes property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used. La. C.C. art. 2341. Louisiana Civil Code art. 2342(A) pertinently provides that a declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act. Separate property of a spouse is hers exclusively. La. C.C. art. 2341.

The party asserting the separate nature of property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community. *In re Succession of Hebert*, 2003-0531 (La. App. 1st Cir. 9/17/04), 887 So.2d 98, 101, *writ denied*, 2004-2571 (La. 12/17/04), 888 So.2d 872. Either spouse may rebut the community presumption by showing the separate nature of property brought into the community by a preponderance of the evidence, "the lowest burden of persuasion." *Talbot v. Talbot*, 2003-0814 (La. 12/12/03), 864 So.2d 590, 600-01. Proof is sufficient to constitute a preponderance when the entirety of the evidence,

7

both direct and circumstantial, establishes the fact or causation sought to be proved is more probable than not. *Talbot*, 864 So.2d at 600.[5]

It is undisputed that Mr. and Mrs. Scott did not enter a separate property regime either before or during their marriage. *See* La. C.C. art. 2328. Therefore, the Shenandoah property was presumed to belong to the community, since Mrs. Scott acquired it during their marriage. *See* La. C.C. art. 2340. Thus, Ms. Williams, as administrator of Mrs. Scott's estate, bore the initial burden of proving the Shenandoah property was Mrs. Scott's separate property and the relief sought by Mr. Scott was barred by prescription. *See In re Succession of Hebert*, 887 So.2d at 101; *Landco Construction, LLC v. Precision Construction & Maintenance*, LLC, 2019-0403 (La. App. 1st Cir. 11/15/19), 290 So.3d 1185, 1190, *writ denied*, 2019-01977 (La. 2/10/20), 292 So.3d 67 (The party who raises an exception of prescription ordinarily bears the burden of proof at trial on the exception.).[6]

### *Exception of Prescription*

Ms. Williams asserts a spouse's right to contest the separate or community nature of property pursuant to La. C.C. art. 2342 is a personal action subject to the ten-year prescriptive period found in La. C.C. art. 3499.[7] Ms. Williams contends that, because Mrs. Scott executed the declaration of acquisition of separate property

---

[5] Mr. Scott asserts Ms. Williams had the burden of proving the Shenandoah property was Mrs. Scott's separate property through proof that is "fixed, clear, positive and legally certain." In *Talbot*, 864 So.2d at 598-600, the Louisiana Supreme Court noted this burden of proof was the same as the clear and convincing standard and declined to require a spouse to rebut the presumption of community through proof that is fixed, clear, positive, and legally certain. The *Talbot* court recognized that imposing the clear and convincing burden of proof would render near impossible the ability of some spouses to prove the separate nature of property acquired, possibly decades before the termination of the community regime. During that broad expanse of time, records are lost, destroyed, and possibly stolen, and to satisfy the clear and convincing burden of proof, a spouse would potentially need to keep evidence dating back decades. *See Talbot*, 864 So.2d 599-600.

[6] On appeal, Mr. Scott asserts the trial court improperly required him to prove the Shenandoah property was community, rather than requiring Ms. Williams to prove the property was not community. We disagree and find the trial court applied the proper burden of proof.

[7] Louisiana Civil Code art. 3499 states, "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

8

in June 2007, Mr. Scott's cause of action to contest the declaration prescribed in June 2017, years before the present claim was asserted. Mr. Scott does not dispute this timeline. Instead, Mr. Scott argues that, because he did not sign or concur in Mrs. Scott's declaration of acquisition of separate property, "there was no prescriptive period that applied to him." Mr. Scott cites no legal authority to support this assertion.

In a case involving no dispute regarding material facts, but only the determination of a legal issue, the reviewing court must apply the *de novo* standard of review. *Big 4 Trucking, Inc. v. New Hampshire Ins. Co.*, 2017-0420 (La. App. 1st Cir. 11/1/17), 233 So.3d 686, 689. The proper application and interpretation of a prescriptive statute is a question of law. *Theriot v. Archer Construction, L.L.C.*, 2017-1304 (La. App. 1st Cir. 4/30/18), 250 So.3d 927, 929, *writ denied*, 2018-0843 (La. 9/28/18), 253 So.3d 145. The issue of whether Mr. Scott's action is prescribed involves the proper application of La. C.C. arts. 2342 and 3499; thus, we apply the *de novo* standard of review.

We find the trial court was legally correct in determining that Mr. Scott's right to controvert Mrs. Scott's declaration of acquisition of separate property under La. C.C. art. 2342 was prescribed. In *Levatino v. Levatino*, 506 So.2d 858, 863 (La. App. 1st Cir. 1987), this court held that the ten-year prescriptive period found in La. C.C. art. 3499 applied to a wife's action to controvert a declaration of separate property pursuant to La. C.C. art. 2342. Similarly, in *Estate of Goss v. Estate of Goss*, 2015-960 (La. App. 3d Cir. 3/9/16), 187 So.3d 570, 575-76, *writ denied*, 2016-0660 (La. 5/27/16), 192 So.3d 743, the court held that, if the husband was not prohibited from controverting the declaration because he was a party to it, his right to contest the classification of the property as his wife's separate property was a personal action subject to the ten year prescriptive period set forth in La. C.C. art.

9

3499.[8] Because more than ten years had passed, the action was time-barred pursuant to La. C.C. art. 2342. *Estate of Goss*, 187 So.3d at 576.

The evidence establishes that Mr. Scott failed to controvert Mrs. Scott's declaration of acquisition of separate property within ten years of June 2007, when Mrs. Scott executed the Act of Cash Sale and when the Act was recorded in the East Baton Rouge Parish mortgage records. Therefore, the trial court correctly determined Mr. Scott's cause of action under La. C.C. art. 2342 was prescribed.

### Objection to Preliminary Detailed Descriptive List

A trial court's findings regarding the nature of property as community or separate is a factual determination subject to manifest error review.[9] *Berthelot v. Berthelot*, 2017-1055 (La. App. 1st Cir. 7/18/18), 254 So.3d 800, 807. Here, the trial court concluded that "the evidence clearly preponderates" the Shenandoah property was Mrs. Scott's separate property. The trial court relied, in part, on the declaration of acquisition of separate property executed by Mrs. Scott. We have already determined that Mr. Scott's right to controvert the declaration is prescribed. Thus, Mrs. Scott's declaration of acquisition of separate property is uncontroverted. *See* La. C.C. art. 2342.

However, the trial court explained that the declaration was not its primary reason for finding the Shenandoah property was Mrs. Scott's separate property.[10]

---

[8] For this reason, we find no merit in Mr. Scott's assertion that this case is distinguishable from *Estate of Goss* because, there, the husband signed a declaration of paraphernality concurring in his wife's declaration of separate property. It is apparent the *Goss* court reached the conclusion that La. C.C. art. 3499 applied if the husband was not prohibited from contesting the declaration. *See Estate of Goss*, 187 So.3d at 575-76. Louisiana jurisprudence as well as the plain language of La. C.C. art. 2342 also belie Mr. Scott's argument that Mrs. Scott's declaration of the acquisition of separate property was invalid because he did not concur in the act of cash sale for the Shenandoah property.

[9] To reverse a fact finder's determination under the manifest error standard, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Marshall v. Marshall*, 2023-0193 (La. App. 1st Cir. 9/28/23), 376 So.3d 891, 894.

[10] According to Mr. Scott, the trial court concluded the declaration was the only evidence presented to overcome the strong presumption in favor of the community. This is patently incorrect.

Instead, the trial court determined Mrs. Scott received a greater percentage of the settlement funds, due to the nature of the parties' claims in the personal injury lawsuit; therefore, Mrs. Scott received sufficient settlement funds, i.e., separate property, to purchase the Shenandoah property.

Mr. Scott argues separate and community funds were commingled, either by the lump sum settlement check or through the deposit of the settlement funds into the Scotts' joint bank account, such that it cannot be determined which portion was Mrs. Scott's separate property. Mr. Scott also argues the trial court erred in finding Mrs. Scott received a larger percentage of the accident settlement, since the record does not contain an itemization reflecting the amounts paid to resolve specific claims. We disagree.

The mere mixing of separate and community funds in a bank account does not itself convert the entire account into community property. Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be upheld. *Downey v. Downey*, 2023-0060 (La. App. 1st Cir. 9/15/23), 375 So.3d 987, 996.

During the hearing on Mr. Scott's objection to the preliminary detailed descriptive list, witnesses testified that, due to the passage of time, records from the bank, the Scotts' personal injury attorney, Travelers, and the title company that handled the closing on the Shenandoah property were unavailable. A trial court has broad discretion in determining the admissibility of parol evidence, particularly when proof required to prove the separate nature of property is difficult to obtain because of the passage of time. *See Talbot*, 864 So.2d at 602; *Vidrine v. Vidrine*, 2014-235 (La. App. 3d Cir. 10/1/14) (unpublished), 2014 WL 4926111, *2; *citing* Andrea Carroll & Richard D. Moreno, *Louisiana Civil Law Treatise: Matrimonial*

11

*Regimes* § 4.8 (3 ed.).[11] Courts are to resolve the admissibility of evidence in favor of receiving the evidence. *Talbot*, 864 So.2d at 602 (finding the trial court did not abuse its discretion by relying on parol evidence, i.e., witness testimony, to establish that stock was the wife's separate property where the stock certificates were not available). We find no abuse of discretion in the trial court's reliance on testimony to find, through reasonable inference, Mrs. Scott's portion of the settlement proceeds was more substantial than any portion owed to the community or to Mr. Scott and was sufficient to fully fund the purchase of the Shenandoah property.

Ms. Williams testified that Mrs. Scott was "severely" injured in the 2005 accident and underwent two surgeries, indicating her personal injury damages would have been substantial. Although Mr. Scott was not involved in the accident, he was a party plaintiff to Mrs. Scott's lawsuit, leading the trial court to reasonably conclude any amount paid to Mr. Scott was for the resolution of his loss of consortium claim. *See Jenkins v. State ex rel. Department of Transportation & Development*, 2006-1804 (La. App. 1st Cir. 8/19/08), 993 So.2d 749, 777, *writ denied*, 2008-2471 (La. 12/19/08), 996 So.2d 1133 (A claim for loss of consortium under La. C.C. art. 2315(B) is a derivative claim, derived from the personal injuries sustained by the primary victim, and includes damages for the loss of material services and support, love, companionship, affection, aid and assistance, society, sexual relations, comfort, solace, and felicity.). Thus, the trial court made the factual determination that Mrs. Scott's percentage of the net settlement amount, which was several hundred thousand dollars, would be "much greater" than the percentage Mr. Scott would have received for his loss of consortium claim. Finally, Mr. Scott testified that Mrs. Scott was not employed and did not earn income. Therefore, it is

---

[11] In evaluating the evidence, some allowance must be made where the acquisition occurred many years before the claim is asserted. Parol evidence may be sufficient to rebut the presumption of community where it is uncontradicted. *In re Succession of Moore*, 2006-906 (La. App. 3d Cir. 12/20/06), 946 So.2d 700, 703.

12

reasonable to infer the settlement would not have included compensation for the loss of community earnings. _See_ La. C.C. art. 2344.

We find no manifest error in the trial court's factual conclusion that Mrs. Scott purchased the Shenandoah property with money she received in the 2007 settlement, which was her separate property pursuant to La. C.C. art. art. 2344. Mrs. Scott's separate funds were traced with sufficient certainty to establish the separate ownership of the Shenandoah property paid for with those funds; thus, the separate status of the Shenandoah property was properly upheld. _See Downey_, 375 So.3d at 996.

## DECREE

We affirm the April 20, 2023 judgment. All costs of this appeal are assessed against Thomas Scott, Jr.

**AFFIRMED.**